## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| ALIN POP, individually and on behalf of all those similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>AT&T Inc. and SNOWFLAKE Inc.<br><br>      Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 3:24-cv-2008<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, Alin POP ("POP" or "Plaintiff") as an individual and on behalf of all others similarly situated ("Class"), brings this Class Action Complaint against the above-named AT&T Inc., a Texas Corporation, ("AT&T") and Snowflake, Inc., a Delaware corporation ("Snowflake"), and alleges, upon personal knowledge as to his own actions and his counsels' investigation, and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.     Plaintiffs bring this action against AT&T and Snowflake on behalf of all consumers nationwide, for their failure to properly secure and safeguard his sensitive

1

information.

2.      Defendant AT&T is a major telecommunication corporation with its headquarters in Dallas, TX.

3.      Defendant Snowflake is a Delaware corporation with its headquarters and principal place of business located in Bozeman, MT, operating a cloud storage service used by many large companies, including AT&T.

4.      Plaintiffs are AT&T customers who entrusted their confidential personal information to AT&T.

5.      As a result of Defendants' failure to implement and maintain reasonable data security measures, an external actor was able to gain unauthorized access to Defendants' systems and access nearly all AT&T's wireless customers record of calls and texts by illegally downloading the data maintained by AT&T in a cloud storage system owned by Snowflake (the "Data Breach")

6.      At some time between April 14, 2024, and April 25, 2024, the unauthorized third-party was able to access Plaintiff's information, which was among the data accessed by in the Data Breach.

7.      The information compromised in the Data Breach included phone numbers of both cellular and landline customers, as well as AT&T records of calls and text messages for at least the period from May 1, 2022, to October 31, 2022 ("Personal Information" or "PII").

8.      Personal Information are representations of information that permits the identity of an individual to whom the information applies to be reasonably inferred by either direct or indirect means.

9.      The Personal Information compromised in the Data Breach was exfiltrated by cyber-criminals and remains in the hands of those cyber-criminals who target Private Information for its value to identity thieves.

10.     Now cybercriminals can identify relationships among phone numbers, a useful data point for hackers to make scams more believable. Now a hacker can see that a customer is in constant contact with a big bank's line and can send a phishing attempts posing as the bank. Also, the hacker could pose as someone the customer has a personal relationship with, like a friend or family member. Also, since some customers' cell tower ID numbers were also exposed, this could help criminals track down geolocations and make hacking attempts even more believable[1].

11.     As a result of the Data Breach, Plaintiff and the Class Members, suffered concrete injuries in fact including, but not limited to: invasion of privacy; theft of their Personal Information; lost or diminished value of Personal Information; lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, actual misuse of the compromised data consisting of an increase in spam calls, texts, and/or emails, as well as financial fraud.

---

[1] https://www.cnn.com/2024/07/12/business/att-customers-data-breach-protection/index.html (last visited July 22, 2024)

12.    Plaintiff's Personal Information remains unencrypted and available for unauthorized third parties to access and abuse; and remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Personal Information.

13.    The Data Breach was a direct result of Defendants' failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Class Member's Personal Information from a foreseeable and preventable cyber-attack.

14.    Failure to implement or enforce the mandatory use of multi-factor authentication by Snowflake was the main factor that contributed to this Data Breach.

15.    AT&T knew or should have known that Snowflake implemented weak security measures that would likely lead to data breaches.

16.    Multiple news networks and multiple cybersecurity specialists agreed that but for the failure to implement proper security procedures, the Data Breach could not have occurred.

17.    Moreover, upon information and belief, Defendant AT&T was targeted for a cyber-attack due to the fact that it collects and maintains highly valuable Private Information on its systems. A 2023 report from cyber intelligence firm Cyble said that U.S. telecommunications companies are a lucrative target for hackers[2].

---

[2] https://cyble.com/blog/u-s-telecommunications-companies-targeted-consumers-hit-hardest/ (last visited June 15, 2024).

18.    Defendant AT&T disregarded the rights of Plaintiff and Class Members by, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to take standard and reasonably available steps to prevent the Data Breach.

19.    Defendants Snowflake was similarly subject to other data breaches as a result of failure to implement proper security measures for the data it hosted.

20.    Plaintiff's and Class Members' Private Information ("PI") are now at risk because of Defendants' negligent conduct because the Private Information that Defendant collected and maintained has been accessed and acquired by data thieves.

21.    As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

22.    Plaintiff and Class Members may also incur out of pocket costs, e.g., for purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

23.    Plaintiff brings this class action lawsuit on behalf all those similarly situated to address Defendants' inadequate safeguarding of Class Members' Private Information that it collected and maintained, information had been subject to the unauthorized access by an unknown third party and precisely what specific type of

information was accessed.

24.     Through this Complaint, Plaintiff seeks to remedy these harms on behalf of himself and all similarly situated individuals whose Private Information was accessed during the Data Breach.

25.     Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## THE PARTIES

**Plaintiff**

26.     Plaintiff, Alin Pop, is an individual residing in Pinellas County, Florida and is otherwise *sui juris*.

27.     Plaintiff is a customer of AT&T for more than 10 years.

28.     Plaintiff received a Notice of Data Breach email from AT&T, on July 15, 2024, at 1:53:33 PM EDT.

**Defendants**

29.     Defendant, AT&T Inc., is incorporated in the State of Texas and its principal place of business is at Whitacre Tower (One AT&T Plaza), 208 S Akard St, Dallas, TX 75201, in Downtown Dallas, Texas. It is the world's fourth-largest telecommunications company by revenue and the largest wireless carrier in the United States.

30.     Defendant, Snowflake, Inc., is incorporated in the State of Delaware and its principal place of business is at 106 E. Babcock St., Ste.3A, Bozeman, MT, 59715.

## JURSIDICTION AND VENUE

31.     This Court has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1332(d)(2).   This is a putative class action whereby: (i) the proposed nationwide class consists of more than 100 members; (ii) at least one class member has a different citizenship from Defendant; and (iii) the claims of the proposed class exceed $5,000,000 in the aggregate.

32.     The Court has personal jurisdiction over the Defendants due to their continuous and systemic contacts with the State of Texas. Defendant AT&T is headquartered and has its principal place of business in Dallas Texas, in the Northern District of Texas.

33.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Plaintiff's claims occurred within the Dallas Division of the Northern District of Texas, where AT&T is headquartered..

## BACKGROUND FACTS

34.     Defendant AT&T has millions of customers for its residential and business telecommunication services.

35.     Defendant Snowflake has over 9,000 customers and hosts data for large international companies like AT&T, Mastercard, HP, PepsiCo, etc.

36.    On July 12, 2024, AT&T publicly announced that data of "nearly all" its 110 million cellular customers, from May 1, 2022, to October 31, 2022, and January 2, 2023 was illegally downloaded from its workspace on a third-party cloud platform.[3]

37.    According to AT&T the stolen data includes calling and texting records of the AT&T customers for a period of six months, including the total count of customer's calls and texts and the call duration. It also included other phone numbers that an AT&T wireless number interacted with during this time, including AT&T landline (home phone) customers.[4]

38.    For a subset of the records, one or more cell site ID numbers associated with the interactions were also included in the Data Breach. This information is used to determine the approximate geographical location of where a call was placed, or a text was sent.

39.    The information about the data breach was sent to AT&T customers in an email on, July 12, 2024, and again on July 15, 2024, in an email titled "Important Data Incident Update."

40.    This is the second data breach involving AT&T already this year. Earlier in the year customer data was stolen from AT&T, including names, dates of birth and social security numbers.

---

[3] https://www.att.com/support/article/my-account/000102979 (last visited July 20, 2024)
[4] *Id.*

41.     Defendant AT&T, however, disregarded its duties and obligations and the privacy rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and/or negligently failing to take and implement adequate and reasonable data security measures to protect and safeguard the Private Information of Plaintiff and Class Members, but rather allowed the information to be stored and maintained in a vulnerable state.

42.     But for Defendant's acts and omissions, the Data Breach would not have happened, and Plaintiff and Class Members would not have been injured as described herein.

### *Defendant's Privacy Policy & Promises*

43.     On its customer-facing website, Defendant has a posted Privacy Policy available at: https://about.att.com/privacy.html.

44.     The Privacy Policy discusses the types of information AT&T collects and the reasons that it might use that information. Defendant lists a number of instances when it might share or disclose the Personal Information entrusted to it without permission, none of which are applicable here.

### *The Data Breach*

45.      According to AT&T, on March 26, 2024, AT&T customer data was illegally downloaded from our workspace on a third-party cloud platform, Snowflake.

46.     AT&T claims that the downloaded data included phone call and text message records of nearly all of AT&T cellular customers from May 1, 2022, to

October 31, 2022, as well as on January 2, 2023. These records identify other phone numbers that an AT&T wireless number interacted with during this time, including AT&T landline (home phone) customers. For a subset of the records, one or more cell site ID numbers associated with the interactions are also included.[5]

47.    The phone numbers included in the data attached to Plaintiff's account at the time ended in 4413, 4867, 4874, 4864, 4862.

### *The Data Breach was Foreseeable and Preventable*

48.    As explained by the Federal Bureau of Investigation, "[p]revention is the most effective defense" against data breaches and it is "critical to take precautions for [data] protection."[6]

49.    Defendants have not publicly shared details of how the Data Breach was perpetrated, other than the fact that one of the hackers has been arrested. It appears that the hacker exploited the lack of security offered by AT&T cloud storage on the Snowflake platform.

50.    Based on Defendant's limited statements, it is clear Defendant did not take reasonable precautions that would have allowed it to quickly detect, prevent, stop, undo, or remediate the effects of the Data Breach. These failures allowed cybercriminals to access and steal the Personal Information about the Plaintiff and

---

[5] https://www.att.com/support/article/my-account/000102979 (last visited July 20, 2024).

[6] *See* How to Protect Your Networks, available at https://www.fbi.gov/file-repository /ransomware-prevention-and-response-for-cisos.pdf/ view (last visited July 16, 2024).

Class Members.

51.    Defendants could have prevented the Data Breach by taking precautionary measures aimed at protecting the data and discouraging attacks.

52.    Additionally, to prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures known to be generally effective at mitigating the risk of a cyberattack:

a)  Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

b)  Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

c)  Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

d)  Configure firewalls to block access to known malicious IP addresses.

e)  Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

f)  Set anti-virus and anti-malware programs to conduct regular scans

automatically.

g) Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

h) Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

i) Execute operating system environments or specific programs in a virtualized environment.

j) Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

k) Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

l) Consider disabling Remote Desktop protocol (RDP) if it is not being used.

m) Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read

specific files, the user should not have write access to those files, directories, or shares.

n) Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[7]

53.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendants could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

a) Update and patch your computer. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks.

b) Use caution with links and when entering website addresses. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter

---

[7] *See* How to Protect Your Networks from RANSOMWARE, at 3, available at https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (last visited Nov. 2, 2022).

yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net). . . .

c) Open email attachments with caution. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

d) Keep your personal information safe. Check a website's security to ensure the information you submit is encrypted before you provide it. . . .

e) Verify email senders. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

f) Inform yourself. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

g) Use and maintain preventative software programs. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic. . . .[8]

54.    To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

a)    Secure internet-facing assets: apply latest security updates; use threat and vulnerability management; perform regular audits; remove privileged credentials;

b)    Thoroughly investigate and remediate alerts: prioritize and treat commodity malware infections as potential full compromise;

c)    Include IT Pros in security discussions: ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

d)    Build credential hygiene: use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

e)    Apply principle of least-privilege: monitor for adversarial activities; hunt

---

[8] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at* https://www.cisa.gov/news-events/news/protecting-against-ransomware (last visited July. 23, 2024).

for brute force attempts; monitor for cleanup of Event Logs; analyze logon events;

f)    Harden infrastructure: use Windows Defender Firewall and higher-grade software; enable tamper protection; enable cloud-delivered protection; turn on attack surface reduction rules.[9]

55.    Given that Defendants were storing the Personal Information of Plaintiff and Class Members, Defendant could and should have implemented, at a minimum, all of the above measures to prevent and detect cyberattacks.

56.    The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures and additional supplemental measures to prevent cyberattacks, resulting in the Data Breach and the unauthorized exposure and exfiltration of the Personal Information of Plaintiff and Class Members.

57.    Despite the prevalence of public announcements of data breach in the communication industry and data security compromises, Defendants failed to take appropriate steps to protect the Personal Information of Plaintiff and Class Members from being compromised.

*Value of Personal Information*

58.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person

---

[9] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Aug. 23, 2022).

without authority." 17 C.F.R. § 248.201 (2013). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."

59.    The Personal Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.

60.    Based on the foregoing, the Personal Information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.

61.    The fraudulent activity resulting from the Data Breach may not come to light for years.

62.    Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when Personal Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[10]

_____

[10] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at* https://www.gao.gov /assets/gao-07-737.pdf (last visited June 16, 2024).

63.     At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the Personal Information of Plaintiff and Class Members, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

64.     The ramifications of Defendant's failure to keep secure the Personal Information of Plaintiff and Class Members are long lasting and severe. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages, in addition to any fraudulent use of their Personal Information.

65.     Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, and thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

66.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the Personal Information of Plaintiff and Class Members.

67.     By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' Personal Information, Defendant AT&T assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Personal Information from unauthorized disclosure.

68.     By storing and deriving a benefit from Plaintiff and Class Members'
Personal Information, Defendant Snowflake assumed legal and equitable duties and
knew or should have known that it was responsible for protecting Plaintiff's and Class
Members' Personal Information from unauthorized disclosure.

69.     Plaintiff and the Class Members have taken reasonable steps to maintain
the confidentiality of their Personal Information.

70.     Plaintiff and the Class Members relied on Defendants to implement and
follow adequate data security policies and protocols, to keep their Personal
Information confidential and securely maintained, to use such Personal Information
solely for business and purposes, and to prevent the unauthorized disclosures of the
Personal Information.

*Defendant Failed to Comply with FTC Guidelines (not pled as an independent cause*
*of action)*

71.     Defendant was prohibited by the Federal Trade Commission Act ("FTC
Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or
affecting commerce." The Federal Trade Commission ("FTC") has concluded that a
company's failure to maintain reasonable and appropriate data security for consumers'
sensitive personal information is an "unfair practice" in violation of the FTC Act. *See,*
*e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

72.     The FTC has brought enforcement actions against businesses for failing
to adequately and reasonably protect customer data, treating the failure to employ

reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

73.     Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff and Class Members' Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

74.     Defendants were at all times fully aware of its obligation to protect the Personal Information stored within its systems because of its position as a leading business affiliate to a variety of companies. Defendants were also aware of the significant repercussions that would result from its failure to do so.

*Plaintiff Pop's Experience*

75.     Prior to the Data Breach, Defendant had access to all the interactions Pop had using one of his AT&T phone numbers, including texts and calls.

76.     Plaintiff Pop allowed his Personal Information to be collected and stored with Defendant with the expectation that his Personal Information would remain confidential.

77.     Plaintiff Pop trusted that his Personal Information would be safeguarded according to AT&T's internal policies and state and federal law.

78.     Upon information and belief, Plaintiff Pop's Personal Information was stored on Defendant's workspace on Snowflake Cloud System during the Data Breach and presently remains in Defendant's possession and control.

79.     On approximately July 15, 2024, Defendant notified Plaintiff that AT&T was subject of the Data Breach.

80.     Plaintiff Pop is very careful about sharing his sensitive Personal Information. Plaintiff Pop has never knowingly transmitted unencrypted sensitive Personal Information over the internet or any other unsecured source, including the name and phone numbers of his contacts or the identifying information of any person to whom he communicated by phone or text. Plaintiff Pop stores any documents containing his Personal Information in a safe and secure location or destroys the documents.

## CLASS ALLEGATIONS

81.      Plaintiffs bring this action as a class pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> National Class: All individuals residing in the United States whose Personal Information was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendant in July 2024 (the "Class").

82.     The class excludes counsel representing the class, governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators,

successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other putative class members.

83. Plaintiffs reserve the right to amend or modify the class descriptions with greater particularity or further division into subclasses or limitation to particular issues.

84. This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23 because it is a well-defined community of interest in the litigation and the class is readily and easily ascertainable.

### *Numerosity*

85. The potential members of the class are so numerous that joinder of all members of the class is impractical. Although the precise number of putative class members has not been determined at this time, Plaintiff is informed and believes that that the proposed class includes millions of members.

### *Predominance*

86. There are common questions of law and fact that predominate over any questions affecting only individual putative class members.

### *Typicality*

87. Plaintiffs' claims are typical of the claims of the members of the putative class because every Class Member was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

### *Superiority of Class Action*

22

88.   A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of putative class members is not practicable and questions of law and fact common to the class members predominate over any questions affecting only individual putative class members.

89.   Each member of the putative class has been damaged and is entitled to recovery by reason of Defendant's illegal acts.

90.   Class action treatment will allow those similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

91.   Plaintiffs are unaware of any difficulties that are likely to be construed in the management of this action that would preclude its maintenance as a class action.

92.   The disposition of all claims of the members of the class in a class action, rather than individual actions, benefits the parties and the Court.  The interests of the class members in controlling prosecution of separate claims against the Defendant is small when compared to the efficiency of a class action.

**Adequacy of Representation**

93.   Plaintiff Pop will fairly and adequately represent and protect the interests of the class. Counsel for Plaintiff and for the putative class members are experienced litigators, competent in litigating class actions, and able to litigate this action on behalf of the class.

/

23

**CLAIMS FOR RELIEF**

**COUNT I – BREACH OF FIDUCIARY DUTY**
**(Against AT&T)**

94.    The allegations contained in Paragraphs 1 – 93 of the Complaint are incorporated by reference as if fully set out herein.

95.    Plaintiffs assert this count on their own behalf and on behalf of all other similarly situated persons members of the National Class.

96.    Because of the special relationship between Defendant and Plaintiff and Class, Defendant became a fiduciary by its undertaking and guardianship of the Personal Information, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Personal Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

97.    Defendant AT&T has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of Defendant's relationship with its customers, in particular, to keep secure their Personal Information.

98.    Defendant breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

99.    Defendant breached its fiduciary duties to Plaintiff and Class Members

by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Personal Information.

## COUNT II – NEGLIGENCE
### (Against Snowflake and AT&T)

100.    The allegations contained in Paragraphs 1 through 93 of the Complaint are incorporated by reference as if fully set out herein.

101.    Plaintiff Pop asserts this count on his own behalf and on behalf of all other similarly situated persons members of the National Class.

102.    Defendants had full knowledge of the sensitivity of the Personal Information and the types of harm that Plaintiff and the Class could and would suffer if the Personally Information were wrongfully disclosed.

103.    Defendants knew or reasonably should have known that the failure to exercise due care in the storing, and using of the Personal Information of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

104.    Defendants had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

105.    Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the Personal Information of Plaintiff and the Class.

106.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential Personal Information, a necessary part of obtaining services from Defendant. That duty further arose because Defendant chose to collect and maintain the Personally Information for its own pecuniary benefit.

107.    Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class members.

108.    A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices and other security breach incidents at other similar providers of telecommunication services.

109.    Plaintiff and the Class's injuries were the foreseeable and probable result of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Personal Information of Plaintiff and the Class, the critical importance of providing adequate security of that Personal Information, and the necessity for using multiple levels of security on encrypting the Personal Information stored on Defendant's systems or workspaces.

110.    Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class.

111.    Plaintiff and the Class had no ability to protect their Personal Identifiable that was within, and on information and belief remains within, Defendant's possession.

112.    Defendant was in a position to protect against the harm suffered by Plaintiff and the Class members as a result of the Data Breach.

113.    Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the Personal Information of Plaintiff and the Class members.

114.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the Personal Information of Plaintiff and the Class during the time the Personal Information was within Defendant's possession or control.

115.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the Personal Information of Plaintiff and the Class in the face of increased risk of theft.

116.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of Personal Information.

117.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the Personal Information of Plaintiff and the Class members would not have been compromised.

118.    There is a close causal connection between Defendant's failure to implement adequate data security measures to protect the Personal Information of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class. The Personal Information of Plaintiff and the Class members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Personal Information by adopting, implementing, and maintaining appropriate security measures.

119.    Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Personal Information and by not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Personal Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

120.    Defendant's violation of Section 5 of the FTC Act is, in and of itself, evidence of Defendant's negligent data security practices.

121.    Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

122.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: substantially increased risk of identity theft, risk that justifies expenditures for remedial services; the loss of the opportunity to decide how their Personal Information is used; the compromise, publication, and/or theft of their Personal Information; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Personal Information; lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; costs associated with placing freezes on credit reports; the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Personal Information of Plaintiff and the Class; and present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

123.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm,

including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

124.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class members have suffered and will suffer the continued risks of exposure of their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures on the dark web, so long as Defendant continues to fail to undertake appropriate and adequate data security measures to protect the Personal Information.

125.    As a direct and proximate result of Defendant's negligence, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

## COUNT III – BREACH OF IMPLIED CONTRACT
### (Against AT&T)

126.    The allegations contained in paragraphs 1 through 93 of the Complaint are incorporated by reference as if fully set out herein.

127.    The named Plaintiff asserts this count on his own behalf and on behalf of the National class, as defined above.

128.    Defendant required Plaintiff and the Class to provide and entrust their Personal Information, including, without limitation, to calling and texting records that Plaintiff's and Class Members' numbers interacted with for a period of at least six months.

129.    As a condition of obtaining services from Defendant, Plaintiff and the Class provided and entrusted Defendant with their Personal Information. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

130.    A meeting of the minds occurred when Plaintiff and the Class agreed to, and did, provide their Personal Information to Defendant with the reasonable understanding that their Personal Information would be adequately protected from foreseeable threats. This inherent understanding exists independent of any other law or contractual obligation at any time that highly sensitive Personal Information maintained as a condition of receiving services. It is common sense that but for this implicit and/or explicit agreement, Plaintiff and Class Members would not have allowed their Personal Information to be maintained by Defendant.

131.    Defendant separately has contractual obligations arising from and/or supported by the consumer facing statements in its Privacy Policies.

132.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

133.    Defendant breached the implied contracts it made with Plaintiff and the Class by failing to safeguard and protect their Personal Information and by failing to

31

provide timely and accurate notice that Personal Information was compromised as a result of the Data Breach.

134. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

135. As a result of Defendant's breach of implied contract, Plaintiff and the Class are entitled to and demand actual, consequential, and nominal damages.

## COUNT IV – BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
### (Against Snowflake)

136. The allegations contained in paragraphs 1 through 93 of the Complaint are incorporated by reference as if fully set out herein.

137. The named Plaintiff asserts this count on his own behalf and on behalf of the National class, as defined above.

138.    Defendant Snowflake entered into contracts with its clients to provide hosting services, including data security practices, procedures, and protocols deemed to be sufficient to safeguard Private Information that was to be entrusted to it.

139.    Such contracts were made expressly for the benefit of Plaintiff and the Class Members, as it was their private information that Snowflake agreed to receive and protect through its secure cloud hosting services.

140.    Therefore, the benefit of collection and protection of the PI and other private information belonging to Plaintiff and the Class was the direct and primary objective of the contracting parties, and Plaintiff and Class Members were direct and express beneficiaries of such contracts.

141.    Snowflake breached its contracts with its clients and, as a result, Plaintiff and Class Members were affected by this Data Breach as a direct result of Defendant failing to use reasonable data security and/or associate monitoring measures that could have prevented the Data Breach.

142.    Plaintiff and the Class were harmed by Defendant's failure to use reasonable data security measures to securely store and protect the files in its care.

143.    Accordingly, Plaintiff and the Class Members are entitled to damages that resulted from Snowflake's breach of the third-party beneficiary contracts.

## COUNT V – UNJUST ENRICHMENT/RESTITUTION
### (Against AT&T)

144.    The allegations contained in paragraphs 1 through 93 of the Complaint

are incorporated by reference as if fully set out herein.

145.    The named Plaintiff asserts this count on his own behalf and on behalf of the National class, as defined above.

146.    Plaintiff and Class Members conferred a monetary benefit on Defendant by providing Defendant, directly or indirectly, with their valuable Personal Information.

147.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff' and Class Members' Personal Information.

148.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

149.    Under the principles of equity, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

150.    Defendant acquired the monetary benefit and Personal Information through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

151.    If Plaintiff and Class Members knew that Defendant had not secured their Personal Information, they would not have agreed to allow their Personal Information to be stored by Defendant.

152.    Plaintiff and Class Members have no adequate remedy at law.

153.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: actual identity theft; the loss of the opportunity how their Personal Information is used; the compromise, publication, and/or theft of their Personal Information; out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Personal Information; lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; time and effort spent to close ghost accounts, the continued risk to their Personal Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Personal Information in their continued possession and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Personal Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

154.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

155.    Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them.

## COUNT V – INVASION OF PRIVACY
### (Against Snowflake and AT&T)

156.    The allegations contained in paragraphs 1 through 93 of the Complaint are incorporated by reference as if fully set out herein.

157.    Plaintiff and Class Members have a legally protected privacy interest in their Personal Information.

158.    Plaintiff and Class Members reasonably expected that their Personal Information would be protected and secured from unauthorized parties, would not be disclosed to unauthorized parties or for any improper purpose.

159.    Defendants invaded the privacy rights of Plaintiff and Class Members by failure to adequately protect Personal Information from disclosure to unauthorized parties, leaving Plaintiff's information exposed to unauthorized parties in a highly offensive manner, leaving the Personal Information in possession to third parties, without the consent of Plaintiff and Class Members.

160.    In failure to protect the Personal Information, Defendants acted

recklessly in regard to Plaintiff and Class Members' privacy rights. Defendants should have known that failure to implement security protocols is highly offensive to a reasonable person in Plaintiff's position.

161.    Defendants' failures amount to violation of the right of privacy both under common law and statutory law.

162.    As a direct and proximate result of the unlawful invasion of privacy, Plaintiff's and Class Members' Personal Information has been viewed by bad actors and their reasonable expectation of privacy has been frustrated and intruded upon.

163.    Plaintiff and Class Members have suffered injuries and are entitled to damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Alin Pop, respectfully requests that this Court enter judgment in his favor and in favor of those similarly situated, as follows:

1.    Certifying and maintaining this action as a class action, with the named Plaintiffs as designated class representative and with his counsel appointed as class counsel;

2.    A declaration that Defendant is in violation of each of the Counts set forth above;

3.    Award Plaintiff and those similarly situated statutory, compensatory, and treble damages;

4.    Award Plaintiff and those similarly situated liquidated damages;

5.    Order the disgorgement of illegally obtained monies;

6.    Award the named Plaintiff a service award;

7.    Award attorneys' fees and costs; and

8.    Grant such further relief as the Court deems just and proper.


Dated: August 7, 2024                Respectfully submitted,

                                     s/Keith L. Gibson
                                     Keith L. Gibson
                                     Keith Gibson Law P.C.
                                     IL Bar No.: 6237159
                                     586 Duane Street, Ste 102
                                     Glen Ellyn, IL 60137
                                     Telephone: (630) 677-6745
                                     Email: keith@keithgibsonlaw.com

                                     Bogdan, Enica (admission forthcoming)
                                     Keith Gibson Law P.C.
                                     FL Bar No.: 101934
                                     1200 N Federal Hwy. Ste.375
                                     Boca Raton, FL 33432
                                     Telephone: (305) 306-4989
                                     Email: bogdan@keithgibsonlaw.com


                                     *Counsel for Plaintiff and the Putative Class*